# David R. Sheridan

33 Grantwood Road
Delmar, N.Y. 12054-2338
www.davidsheridan.com

*Attorney and Counselor at Law*

September 16, 2013

Phone : (518) 475-0154
david@davidsheridan.com

Hon. Christian F. Hummel
U.S. District Court
Northern District of New York
James T. Foley Courthouse
445 Broadway
Albany, NY 12007

    Re:    Balaban v. Executive Risk
             No. 1:13-CV-0282 GLS/CFH

Dear Judge Hummel:

      I write in response to the letter-motion of defendant Executive Risk Insurance, Inc. ["the Insurer"], dated September 11, 2013.

      The summary chronology on page 2 of the Insurer's letter of September 11 omits two important facts. These facts help show that the parties--and in particular the Insurer--did not consider themselves bound without a signed settlement agreement.

      In its letter, the Insurer asserts that on July 22, 2013, "The parties agree[d] to settle this action for $17,621.26." Indeed, evidently both parties thought that they had settled the action for that amount. The next day, the plaintiffs sent the Insurer a form of release for approval, which released only their claim for defense expenses, since that was the only claim asserted in the action. Copies of the e-mail and attached release are submitted as Exhibit "H."[1] Two days later, it became evident that (1) the parties had not settled the case and that (2) the Insurer required not just a release but an executed "Settlement Agreement and Release." By e-mail dated July 25, 2013, the Insurer sent the plaintiffs a proposed "Settlement Agreement and Release" that released not only the claim for defense expenses but also the unasserted, contingent claim for indemnification, and that required the signatures of the defendant and each of the plaintiffs before it became effective. Copies of the e-mail and proposed "Settlement Agreement and Release" are submitted as Exhibit "I."

      Thereafter, the attorneys engaged in an exchange of correspondence and drafts, which ended with an e-mail by the attorney for the Insurer to the attorney for the plaintiffs on August 22, 2013 (Exhibit "G" to the Insurer's letter of September 11), which is quoted in part in the

---

[1] The last Exhibit to the Insurer's letter of September 11, 2013, is Exhibit "G"

Hon. Christian F. Hummel
September 16, 2013
Page 2

Insurer's letter to the Court dated September 11, 2013.  That e-mail states, <u>in full</u>, as follows:

> David:
> Here is a new version with your changes accepted, and no other changes made.
> <u>Please let me know if this will do.</u>
> Melissa.

(Emphasis supplied.)  The underlined portion of this letter was not quoted in the Insurer's letter to this Court.  The underlined portion clearly indicates that the Insurer did not consider any settlement to have been completely and finally agreed upon without further assent from the plaintiffs.  This interpretation is further reinforced by the fact that the Insurer did not then tender, and to date has not tendered, a settlement document signed by the Insurer.  For the reasons set forth at the end of this letter, plaintiffs ultimately told the insurer that they would not agree with the proposed "Settlement Agreement and Release," <u>i.e.</u>, that it would "not do."

In addition to this crucial fact, an analysis of the four factors set forth in the leading Second Circuit cases shows that the parties did not have a binding agreement.  <u>Ciaramella v. Reader's Digest Assn., Inc.</u>, 131 F3d 320 (2d Cir. 1997), is a leading case in this Circuit and is cited in the Insurer's letter to the Court.  <u>Ciaramella</u> teaches that one must examine the unexecuted document that is asserted to be binding, to determine whether it contradicts that assertion. The settlement agreement in <u>Ciaramella</u> contained a merger clause that stated as follows:

> This Settlement Agreement and General Release constitutes the complete understanding between the parties, may not be changed orally and supersedes any and all prior agreements between the parties . . . .

131 F3d at 324.  The Court said, "The presence of such a merger clause is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement." <u>Id</u>.  The unsigned document that is asserted to be binding in this case also has a merger clause, which states:

> 5. Entire Agreement: . . . .  This Settlement Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, whether written or oral, between and among the Parties with respect to the subject matter hereof. . . . .

Like the merger clause in <u>Ciaramella</u>, the merger clause in this case is "persuasive evidence" that the plaintiffs and the Insurer did not intend to be bound absent execution of the "Settlement Agreement and Release."

In holding that there was no binding agreement absent execution, the <u>Ciaramella</u> court also relied upon a clause in the proposed agreement that said:

Hon. Christian F. Hummel
September 12, 2013
Page 3

> Mr. Ciaramella represents and warrants that he . . . has executed this Settlement Agreement and General Release after consultation with his . . . legal counsel; . . . that he voluntarily assents to all the terms and conditions contained therein; and that he is signing the Settlement Agreement and General Release of his own force and will.

131 F3d at 325.  The Court said that this meant that it was Mr. Ciaramella's signature that represented his "voluntary and informed consent." Id.   Similarly, the proposed "Settlement Agreement and Release" in this case states:

> The Parties have executed this Settlement Agreement without reliance upon any promise, representation or warranty other than those expressly set forth herein. The Parties all separately acknowledge that: (i) they have carefully read this Settlement Agreement; (ii) they have had the assistance of legal counsel of their choosing (and such other professionals and advisors as it has deemed necessary) in the review and execution hereof; (iii) the meaning and effect of the various terms and provisions hereof have been fully explained to them by such counsel; and (iv) they have executed this Settlement Agreement of their own free will.

As in Ciaramella, the "Settlement Agreement and Release" is itself the best evidence that the parties consent was to be evidenced by signatures.

The proposed "Settlement Agreement and Release" in this case says that the Insurer's payment to plaintiffs "shall be made within twenty one business days of [Executive Risk's] receipt of this Agreement, duly executed by Plaintiffs." (Emphasis supplied.)  This language supports a conclusion that "execution was necessary to trigger either party's obligations." See Ciaramella, supra, 131 F3d at 324.

A second factor considered by Ciaramella is whether there has been any part performance by either party.  There has not been any such performance in this case. Jackson v. Heidelberg, LLC, 296 Fed. Appx 102 (2d Cir. 2008), cited by the Insurer, is inapplicable.  In Jackson, the parties stipulated to a settlement on the record in open court.  The Second Circuit agreed with the district court that

> [a] district court has the power to enforce a settlement agreement reached in a case pending before it where there was a "voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record."

296 Fed Appx. at 102-03.  Part of the stipulation entered into in open court was that the defendant would deliver to the plaintiff a written agreement. The Second Circuit pointed to delivery of that written agreement as part performance of the enforceable settlement agreement reached on the record in open court.  In contrast, delivery of a draft--even a final draft--of a proposed written "Settlement Agreement and Release" can hardly be part performance of the

Hon. Christian F. Hummel
September 12, 2013
Page 4

terms of that proposed written agreement.

  A third factor is whether any terms remained to be negotiated.  At the time of the Insurer's  final e-mail, plaintiffs' consideration of settlement in this case was interrupted by contact from a plaintiff in an underlying state-court action regarding settlement of the state-court actions.  However, plaintiffs cannot at this time point to any terms that they would have changed.

  A fourth factor is whether is whether the agreement is of a type normally put in writing.  The Ciaramella court noted, "Settlements of any claim are generally required to be in writing, or, at a minimum, made on the record in open court."  131 F3d at 325.  The Court found that this factor favored a holding that an unsigned writing was not a binding agreement.

  In summary, three of the four factors enunciated in Ciaramella favor a holding that absent execution of the proposed "Settlement Agreement and Release," the parties had not entered into a binding settlement agreement.

  The Insurer cites Bastedo v. North Rose-Wolcott Cent School Dist., 2013 U.S. Dist Lexis 35484 (W.D.N.Y. March 14, 2013), for the proposition that a district court may enforce a settlement agreement.  There is no question that a district court may enforce a settlement agreement if it determines under applicable law that the asserted agreement is enforceable.  The question in this case is whether the parties entered into any such enforceable agreement.  Bastedo is irrelevant to that question, since it deals with rescission based on mistaken information.  The Insurer cites Grupo Sistemas Integrales de Telecommunicacion S.A. de C.V. v. AT&T Communications, Inc., 1994 U.S. Dist. Lexis 11896 (S.D.N.Y. August 24, 1994), in support of its case.  In Grupo Sistemas, the court refused to enforce an alleged oral agreement.

  Hostcentric Technologies, Inc. v. Republic Thunderbolt, LLC, 2005 U.S. Dist. Lexis 11103 (S.D.N.Y. June 9, 2005), cited by the Insurer, supports the conclusion that the parties to the case before this court did not enter into an enforceable agreement.  The penultimate exchange of e-mails between the attorneys in Hostcentric is as follows:

> Michael,
>
> This is to confirm my client's *final settlement counter-proposal*:
>
> Fairchild will accept payment from your client in the amount of $ 755,000.00 with my client retaining the security deposit. The pending action would be dismissed with prejudice and all parties would exchange mutual general releases. The payment is due my client within 10 days from today's date.
>
> I must have your answer before the deposition of Robert Sanchez takes place tomorrow. *This counter-proposal expires by 9:30AM tomorrow unless accepted by you before that time.*

Hon. Christian F. Hummel
September 12, 2013
Page 5

>Your client will be required to remove its property from the premises within 21 days and at its own expense.
>
>Anton

2005 U.S. Dist. Lexis 11130 at *4 (Emphasis supplied by court.)

>Anton,
>
>My client picked up my voicemail message and called me back.
>
>*I am writing to formally accept your settlement offer as set forth by you in your message from earlier this evening below.*
>
>*This matter is now conclusively settled.* Please let me know how you would like to communicate this fact to the Court.
>
>MSF

Id. at *4-*5. (Emphasis supplied by court.)  As noted above, in this case, the last e-mail from the Insurer concludes, "Please let me know if this will do."  The contrast between this case and Hostcentric could not be more stark.

The Insurer repeatedly refers to plaintiffs' "change of heart."  Plaintiffs in this action agree that if they had entered into an enforceable agreement, they would not be entitled to escape it on account of a mere "change of heart."  Conversely, if there was no enforceable agreement, then whether plaintiffs were motivated by a wisp of a whim or the most solid of reasons would make no difference.  Nonetheless, plaintiffs will give a brief description of the circumstances underlying their ultimate decision not to enter into a settlement agreement in this case.

Plaintiffs are four among many former trustees of a defunct workers' compensation self insurance trust.  Two plaintiffs owned small businesses that were members of the trust, and two were employees of such businesses.  Plaintiffs, along with various professionals and consultants, are now defendants in two actions in New York State Supreme Court--one brought by the Workers' Compensation Board, and one by former members of the trust.  The Board and the former members seek $188 million that they say is the deficit in the trust caused by the alleged misconduct of the trustees, professionals, and consultants.

The Insurer issued a directors, officers, and trustees policy to, among others, the trust.  Plaintiffs sought a defense under the policy.  The Insurer disclaimed, citing an exclusion.  None of the plaintiffs in this declaratory judgment action is wealthy, and some are living paycheck to paycheck. Many months ago, plaintiffs proposed to the Workers' Compensation Board and the former members that they settle with plaintiffs and enforce the resulting judgment against the

Hon. Christian F. Hummel
September 12, 2013
Page 6

Insurer. The Board and members declined. To plaintiffs' surprise, at about the same time as the Insurer sent its "let me know if this will this" e-mail, the Board expressed a firm interest in settlement along the terms suggested long previously by the plaintiffs. A settlement between plaintiffs and the Board, coupled with discontinuance without prejudice of this declaratory judgment action, would put the coverage controversy where it belongs--in the hands of the Insurer and the injured party ultimately to be compensated by the policy. It would also spare the plaintiffs further expense in defending the actions by the board and members, and in prosecuting this action. Finally, it would save the Insurer the $17,000+ that it would have had to pay to settle this action.

These circumstances--not a whim or a "change of heart"--prompted the plaintiffs to seek an extension of the deadline for motions in this case so that they could pursue settlement with the Board and the former members of the trust.

Plaintiffs respectfully submit that under the facts and the law of this they and the Insurer did not enter into a settlement agreement that may be enforced by this Court. Plaintiffs request that this Court deny the Insurer's motion to enforce the allege settlement agreement. Plaintiffs request that the Court grant their motion to extend the motion deadline in this case so that they can pursue settlement of the underlying actions by the Board and the former members of the trust.

        Very truly yours,

        /s/
        David R. Sheridan
        NDNY Bar Roll No. 102598

cc: (by ECF) Melissa Brill, Esq.