**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
----------------------------------------------------------------
JUDY BALABAN-KRAUSS, et al.,

                        Plaintiffs,

    v.                                            13-CV-282 (GLS/CFH)

EXECUTIVE RISK INDEMNITY, INC.,

                        Defendant.
----------------------------------------------------------------

**APPEARANCES:**                              **OF COUNSEL:**

OFFICES OF DAVID R. SHERIDAN
Attorney for Plaintiffs
33 Grantwood Road
Delmar, New York 12054

COZEN O'CONNOR                        MELISSA F. BRILL, ESQ.
Attorneys for Defendant
45 Broadway Atrium, 16th Floor
New York, New York 10006

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

**REPORT-RECOMMENDATION AND ORDER**[1]

    Defendant brings this action to enforce an alleged settlement agreement between the parties that largely took place by electronic mail ("e-mail"). Dkt. Nos. 15, 19. Plaintiffs oppose the motion. Dkt. Nos. 16-17, 20. For the reasons which follow, it is recommended that defendant's motion be denied.

---

    [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

## I. Background

### A. Procedural History

Plaintiffs originally filed this action in New York State Supreme Court. On March 13, 2013 defendant filed a notice of removal. Not. of Removal (Dkt. No. 1). Each of the plaintiffs in this declaratory judgment action are defendants in an action pending in a New York State Court brought by the Worker's Compensation Board alleging they breached their duties as trustees of the Health Care Providers Self Insurance Trust. Dkt. No. 1-1 at 3-4. One of the plaintiffs in this action, Ronald Field, is also a defendant in a New York State Court action brought by certain former members of the Health Care Providers Self Insurance Trust. Sheridan Affirm. (Dkt. No. 17) ¶ 2.

Plaintiffs sought a defense in those actions under a policy issued by defendant. Dkt. No. 1-1 at 5-7. When defendant disclaimed coverage, plaintiffs commenced this action seeking a declaration that defendant is obligated to pay their defense costs in the state court actions. Dkt. No. 1-1 at 4-8.

### B. The Settlement Negotiations

The parties have annexed to their moving papers portions of e-mail messages through which the settlement negotiations at issue took place. The e-mails are between David R. Sheridan, Esq., plaintiffs' attorney, and Melissa Brill, Esq. of Cozen O'Connor, attorneys for defendant.

On July 22, 2013 Sheridan sent an e-mail stating, in part, "We will settle this case today for $17,621.26." Dkt. No. 15-4 at 2. Brill responded on July 22, 2013, "I got the $17,621.26.

Done." Id.

By e-mail dated July 23, 2013, Sheridan sent a form release to Brill with a request that she promptly forward any proposed revisions. Dkt. No. 17-1 at 2. On July 24, 2013 Brill sent Sheridan an e-mail indicating she would have proposed revisions once she heard from her client. Dkt. No. 17-2 at 2. Brill forwarded proposed changes to Sheridan by e-mail dated July 25, 2013. Dkt. No. 17-3 at 2-7. The proposed changes included a settlement agreement and release. Id. at 3-7. By e-mail dated July 25, 2013 Sheridan sent Brill a revised settlement agreement and release. Dkt. No. 17-4 at 2.

On August 2, 2013 Brill sent Sheridan an e-mail indicating that, "the deal I believe we agreed to ($17, 621.76 for a full release - defense and indemnification, as reflected in my proposed settlement agreement) is still on the table." Dkt. No. 15-5 at 2. Sheridan responded by e-mail indicating plaintiffs would accept that sum in settlement of both defense and indemnity. Id. He attached a "slightly revised version of the agreement." Id.

On August 13, 2013 Brill sent Sheridan a final version of the settlement agreement and release. Dkt. No. 15-6 at 2-3. Sheridan responded by e-mail, setting forth additional proposed changes. Id. at 2.

By e-mail dated August 16, 2013 Brill sent a revised settlement agreement and release to Sheridan. Dkt. No. 15-7 at 2-9. On August 20, 2013 Sheridan sent Brill an e-mail with additional revisions to the settlement agreement and release. Dkt. No. 15-8 at 2.

On August 22, 2013 Brill sent Sheridan an e-mail which read, "Here is the new version, with your changes accepted, and no other changes made. Please let me know if this will do." Dkt. No. 15-9 at 2. A settlement agreement and release was attached to that e-mail. Id. at 4-10. Brill sent Sheridan a second e-mail that day regarding the location of the

signature lines. Dkt. No. 17-8 at 2. That is the last e-mail regarding settlement which was provided to the Court.

On September 10, 2013 plaintiffs filed a letter motion requesting an extension of the deadline for filing of dispositive motions. Dkt. No. 7.[2] Plaintiffs requested that extension as they had reached an agreement in principal to settle the actions pending in New York State Supreme Court. Id. By letter motion dated September 22, 2013 defendant asked the Court to enforce the terms of the alleged settlement. Dkt. No. 8. Following a telephone conference on September 19, 2013, the Court issued a briefing schedule for defendant's motion to enforce the terms of the alleged settlement. Dkt. No. 14.

### C. Pending Motion

Defendant contends that the parties reached a binding settlement agreement through a series of e-mail correspondence which reflect that all of the material terms were agreed to and that the settlement was not contingent on any future event. Defs. Reply (Dkt. No. 19) at 1. Plaintiffs contend there was no binding settlement agreement as the parties did not intend to be bound by the agreement absent the execution of the settlement agreement and release, which never occurred. Dkt. No. 11 at 2.[3]

---

[2] The Court granted plaintiffs' letter request to the extent that the deadline for filing dispositive motions was extended to October 4, 2013.

[3] This document was also annexed to defendants' pending motion to enforce the settlement. See Dkt. No. 15-11.

## II. Discussion

### A. Applicable Law

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999) (citations omitted). "Accordingly, it requires an offer, an acceptance, and consideration to be enforceable, and will be construed in accordance with the intent of the parties." Ostman v. St. John's Episcopal Hosp., 918 F. Supp. 635, 643 (E.D.N.Y. 1996) (citations omitted). "[P]arties may enter into binding oral settlements, so long as the parties intended to be bound." Marino Inst. of Continuing Legal Educ., Inc. v. Issa, No. 12-CV-4320 (KPF), 2013 WL 6723614, at *5 (S.D.N.Y. Dec. 20, 2013) (citing Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985) (citations omitted)). "This is true even if the parties contemplate [later] memorializing their agreement in a fully executed document." Marino Inst. of Continuing Legal Educ., 2013 WL 6723614, at *5 (citing R.G. Group, Inc. v. Hardart Co., 751 F.2d 69, 74 (2d Cir. 1984)).

In Winston v. Mediafare Entm't Corp., the Second Circuit outlined the four primary factors courts are to consider in determining whether the parties intended to be bound by an oral agreement:

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

777 F.2d at 80 (citations omitted).

### B. Application

### 1. Reservation of Rights

The first Winston factor is whether the parties expressly reserved the right not to be bound. Winston, 777 F.2d at 80. In this case, the parties reached an agreement on the amount of a potential settlement in e-mails dated July 23, 2013. Dkt. No. 15-4 at 2. The parties thereafter exchanged a series of e-mails regarding the language to be included in the settlement agreement and release.

On August 22, 2013 Brill sent Sheridan an e-mail agreeing to the changes which Sheridan had requested to be made to the settlement agreement and release. Dkt. No. 15-9 at 2. The settlement agreement and release provides at paragraph 5, inter alia,

> This Settlement Agreement contains the entire understanding of the Parties with respect to the subject matter hereof and supersedes all prior agreements and understandings, whether written or oral, between and among the Parties with respect to the subject matter hereof. The Parties have executed this Settlement Agreement without reliance on any promise, representation or warranty other than those expressly set forth herein.

Id. at 7. The settlement agreement and release further provides "[s]ettlement [p]ayment shall be made within twenty one business days of ERII's receipt of this Agreement, duly executed by Plaintiffs." Id. at 5.

Defendant contends that the "merger clause" is irrelevant as it is merely "boiler plate language" inserted by defendant. Defs. Memorandum of Law (Dkt. No. 15-1) at 8-9. The fact that the merger clause was originally inserted by defendant is of no moment. Once the merger clause was included in the proposed settlement agreement and release, it was included in all subsequent versions of the settlement agreement and release. The language

was ultimately adopted and agreed to by both parties.  If the parties had intended to be bound by the e-mails, they would not have exchanged numerous versions of the proposed language in the settlement and release.  See Edwards v. City of New York, No. 08-CV-2199 (FB)(JO), 2009 WL 2865823, at *4-*5 (E.D.N.Y. May 22, 2009) (explaining that while neither party proffered an express right not to be bound to the terms of the agreement absent a signed writing, the actions of the counsel through their correspondence with one another clearly evidenced such an intent).

On balance, the facts in this action weigh against enforcing the settlement.  Although the parties reached an agreement on the amount of the settlement, the lengthy negotiations regarding the language of the settlement agreement and release "approach an express reservation of the right not to be bound until a written settlement agreement was executed." Abel v. Town Sports Int'l Holdings, Inc., No. 09-CV-10388(DLC), 2010 WL 5347055, at *5 (S.D.N.Y. Dec. 23, 2010).

### 2. Partial Performance of the Agreement

The second factor to consider is whether there has been partial performance of the agreement.  Winston, 777 F.2d at 80.  In this case, there is no evidence of partial performance.  See Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 325 (2d Cir. 1997) (explaining that partial performance is absent where "the . . . basic elements of consideration that would have been due to [the parties] under the settlement agreement," were not yet provided).

Defendant contends that the circulation of the settlement agreement and release constitutes partial performance of the agreement.  Dkt. No. 15-1 at 5; see also Jackson v.

Heidelberg L.L.C., 296 Fed. App'x 102, 103 (2d Cir. 2008) (finding partial performance existed where the only performance contemplated was reducing the agreement to writing in exchange for paying the agreed upon settlement amount and because "[d]efendant delivered to plaintiff a written agreement, which plaintiff refused to sign . . . partial performance of the contract," had been completed). Here, the exchange of various proposals regarding the language in the settlement agreement and release was not performance of an existing agreement, but rather was part of the negotiations concerning a written agreement which was by the terms binding only when executed by the parties. As such, this factor favors plaintiffs.

### 3. Agreement Upon All Terms

As the parties have agreed to all of the terms, including the amount of the settlement and the language of the settlement agreement and release, this factor weighs in defendant's favor.

### 4. Agreement of the Type Normally Reduced to Writing

The fourth Winston factor is whether this is the type of agreement that is usually reduced to writing. Winston, 777 F.2d at 80. In Winston, the Court stressed that the complexity of the transaction is relevant to whether it is the type of matter that is generally a written settlement. Id. at 83. The parties agree that this is the type of agreement, a dispute regarding insurance coverage, which is usually reduced to writing.

### III. Conclusion

When the factors identified in Winston are applied to this case, most particularly the reservation not to be bound absent a signed agreement, they counsel in favor of a determination that the e-mails between the parties do not produce a binding settlement agreement. As such, it is recommended that defendant's motion (Dkt. No. 15) be **DENIED.**

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court "within fourteen (14) days after being served with a copy of the . . . recommendation." N.Y.N.D.L.R. 72.1(c) (citing 28 U.S.C. §636(b)(1)(B)-(C)). **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**IT IS SO ORDERED**.

Dated:  February 6, 2014
        Albany, New York

*Christian F. Hummel*
Christian F. Hummel
U.S. Magistrate Judge