**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JUDY BALABAN-KRAUSS et al.,**

                  **Plaintiffs,**         1:13-cv-282
                                          (GLS/CFH)
         v.

**EXECUTIVE RISK INDEMNITY, INC.,**

                  **Defendant.**
_____

**APPEARANCES:**                               **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Office of David R. Sheridan               DAVID R. SHERIDAN, ESQ.
33 Grantwood Road
Delmar, NY 12054

**FOR THE DEFENDANT:**
Cozen, O'Connor Law Firm               MELISSA F. BRILL, ESQ.
45 Broadway Atrium
16th Floor
New York, NY 10006

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Pending before the court is a motion by defendant Executive Risk

Indemnity, Inc. (ERII), to enforce a settlement agreement allegedly entered

into with plaintiffs Judy Balaban-Krauss, Robert Callaghan, Ronald Field, and Laura Donaldson. (Dkt. No. 15.) In a Report-Recommendation and Order (R&R) dated February 6, 2014, Magistrate Judge Christian F. Hummel recommended that the motion be denied. (Dkt. No. 22 at 9.) ERII has filed objections to the R&R. (Dkt. No. 23.) For the reasons that follow, the R&R is adopted in its entirety and ERII's motion is denied.

## II. **Background**

This declaratory judgment action arose when plaintiffs sought insurance coverage by ERII for legal defense in an underlying state court action brought against them, in which they were accused of breaching their duties as trustees of an insurance trust. (Compl., Dkt. No. 1, Attach. 1 at 3-8.) When ERII disclaimed coverage, plaintiffs commenced this action seeking a declaration that ERII must cover the costs of their defense in that underlying state court action. (*Id.*)

While this action remained pending, the parties engaged in settlement negotiations by way of various emails between their respective attorneys: David Sheridan, for the plaintiffs, and Melissa Brill, for ERII. On July 22, 2013, Sheridan, via email, notified Brill that his clients "will settle this case today for $17,621.26." (Dkt. No. 15, Attach. 4 at 2.) Brill

responded, "I got the $17,621.26. Done." (*Id.*) The next day, Sheridan responded by sending a one-page form release, and asking that Brill inform him "promptly" if she had "any proposed revisions." (Dkt. No. 17, Attach. 1 at 2-3.) Brill responded the following day, on July 24, and indicated that she "w[ould] have proposed revisions" once she heard back from her client. (Dkt. No. 17, Attach. 2 at 2.) On July 25, Brill emailed Sheridan, requesting proposed changes, and attaching a five-page "Settlement Agreement and Release." (Dkt. No. 17, Attach. 3 at 2-7.) That same day, Sheridan responded, attaching a "revised version" of the agreement, and noting a potential issue regarding the release of a possible indemnification claim. (Dkt. No. 17, Attach. 5 at 2, 4-8.)

The next communication between the parties is an August 2 email from Brill to Sheridan, indicating that the prior deal was "still on the table"; Sheridan replied that his clients "will take the $17,621.26 in settlement of both defense and indemnity," attached a "slightly revised version of the agreement," and requested that Brill insert any additional language she wanted in the agreement, so that Sheridan could "send one copy to each client for signature." (Dkt. No. 15, Attach. 5 at 2.) Brill responded, attaching what she "hope[d] is the final version of the settlement agreement

3

and release," and asking that plaintiffs sign the attached agreement. (Dkt. No. 15, Attach. 6 at 1.) Sheridan replied to that email, noting a concern about the scope of the release, and proposing additional changes to the agreement. (*Id.*) The parties exchanged additional proposed changes and revisions. (Dkt. No. 15, Attach. 7 at 2-9; Dkt. No. 15, Attach. 8 at 2.) Finally, on August 22, Brill sent Sheridan a "new version, with [his] changes accepted, and no other changes made," and asking Sheridan to "let [her] know if this will do." (Dkt. No. 15, Attach. 9 at 2.)

This final version provided that ERII would make a settlement payment of $17,631.26 to plaintiffs "within twenty[-]one business days of ERII's receipt of th[e] Agreement, duly executed by [p]laintiffs." (*Id.* at 5.) Then, within five days of receipt of the payment, Sheridan would be required to execute and file a stipulation of discontinuance with the Clerk of the court. (*Id.* at 7-8.) Additionally, the agreement contained a merger clause which stated that the agreement "contains the entire understanding of the [p]arties with respect to the subject matter hereof and supersedes all prior agreements and understandings, whether written or oral," and indicated that "[t]he [p]arties have executed this [s]ettlement [a]greement without reliance upon any promise, representation or warranty other than

4

those expressly set forth herein," and "they have executed this [s]ettlement [a]greement of their own free will." (*Id.* at 7.) Plaintiffs never signed the agreement.

There were no further communications between the parties regarding settlement. Ultimately, on October 10, ERII filed the instant motion, seeking to have the court enforce the allegedly binding settlement agreement reached by the parties. (Dkt. No. 15.)

### III. Standard of Review

Before entering final judgment, this court reviews report and recommendation orders in cases it has referred to a magistrate judge. If a party properly objects to a specific element of the magistrate judge's findings and recommendations, this court reviews those findings and recommendations *de novo*. *See Almonte v. N.Y. State Div. of Parole*, No. Civ. 904CV484GLS, 2006 WL 149049, at *3, *5 (N.D.N.Y. Jan. 18, 2006). In those cases where no party has filed an objection, only vague or general objections are made, or a party resubmits the same papers and arguments already considered by the magistrate judge, this court reviews the findings and recommendations of the magistrate judge for clear error. *See id.* at *4-5.

## IV. **Discussion**

ERII has specifically objected to the recommendation in the R&R that its motion be denied. (Dkt. No. 23 at 1-2; Dkt. No. 23, Attach. 1 at 3-13.) The court therefore has conducted a *de novo* review of this issue and, for the reasons that follow, the R&R is adopted in its entirety and ERII's motion is denied.

"A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it." *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir. 1974). "An agreement to end a lawsuit is construed according to contract principles." *United States v. Sforza*, 326 F.3d 107, 115 (2d Cir. 2003). Therefore, the disposition of this motion turns on whether the parties here in fact reached a binding agreement or enforceable contract.

As relevant here, the Second Circuit has "articulated several factors that help determine whether the parties intended to be bound in the absence of a document executed by both sides." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). The four factors a court is to consider in making this determination are:

(1) whether there has been an express reservation of the

> right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

*Id.*

In its objections, ERII asserts that Judge Hummel erred in treating the parties' final version of the settlement agreement, sent on August 22, 2013, as the formation of the parties' contract to settle. (Dkt. No. 23 at 1-2.) Instead, ERII argues that contract formation occurred via the parties' initial email communication on July 22, 2013, and that this contract satisfies the four *Winston* factors such that it should be enforced. (*Id.*) Even if the August 22 exchange is considered the parties' final written agreement, however, ERII asserts that it also satisfies the four *Winston* factors. (Dkt. No. 23, Attach. 1 at 6-13.) The court will address each of these factors in turn below.

### A. Reservation of the Right Not to be Bound in the Absence of a Writing

As to the first factor, ERII argues that plaintiffs never reserved the right not to be bound absent an executed agreement, and therefore "the parties' email correspondence formed a valid, binding, and enforceable

7

settlement agreement." (*Id.* at 6-11.) ERII additionally argues that the presence of the merger clause in the agreement "does not necessarily . . . indicate that the parties lacked the intent to settle." (*Id.* at 9-10.)

Here, it is apparent that no final agreement to settle the claims existed, and that the parties clearly intended to complete the agreement only with the execution of a signed release. The final version of the proposed settlement agreement sent by ERII on August 22 makes clear that the parties did not consider the agreement complete until the agreement was signed by plaintiffs. (Dkt. No. 15, Attach. 9 at 4-10.) ERII's consideration for the agreement was plaintiffs' promise to release any claims against ERII. (*Id.* at 5-6.) The proposed agreement provides that "[t]he Settlement Payment shall be made within twenty[-]one business days of ERII's receipt of this Agreement, duly executed by plaintiffs." (*Id.* at 5.) Then, within five days of receiving the payment, plaintiffs were to file with the court a stipulation to discontinue this action. (*Id.* at 7-8.) Thus, the language of the agreement indicates that ERII was to provide its consideration for the agreement only after plaintiffs returned a signed copy of the agreement to ERII, which never occurred here. Accordingly, the language of the final agreement dictates that plaintiffs' execution of the

8

agreement was necessary in order to trigger either party's obligations. *See Gaul v. Chrysler Fin. Servs. Ams., LLC*, No. 1:13-cv-433, 2014 WL 1466491, at *5 (N.D.N.Y. Apr. 15, 2014).

Further, while, as ERII argues, the presence of the merger clause may not be dispositive of this factor, "the presence of a merger clause 'is persuasive evidence that the parties did not intend to be bound prior to the execution of a written agreement.'" *Kaczmarcysk v. Dutton*, 414 F. App'x 354, 355 (2d Cir. 2011) (quoting *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d 320, 324-25 (2d Cir. 1997)); *see Winston*, 777 F.2d at 80 ("[I]f either party communicates an intent not to be bound until he achieves a fully executed document, no amount of negotiation or oral agreement to specific terms will result in the formation of a binding contract."). This factor therefore leans against enforcing the parties' unsigned agreement. *See Ciaramella*, 131 F.3d at 324 ("[W]ording in a settlement agreement that place[s] great significance on the execution date evince[s] an intent not to create a binding settlement until some formal date of execution." (citing *Davidson Pipe Co. v. Laventhol & Horwath*, Nos. 84 Civ 5192, 84 Civ 6334, 1986 WL 2201, at *4 (S.D.N.Y. Feb. 11, 1986)).

**B.   Partial Performance of the Contract**

With respect to the second factor, ERII argues in its objections that emailing the final written agreement to plaintiffs on August 22 constituted partial performance of the parties' settlement agreement. (Dkt. No. 23, Attach. 1 at 11-12.) ERII asserts that "[e]xchanging a final written agreement, even if it is never formally executed, strongly evidences that a valid and enforceable settlement was reached," and generally constitutes partial performance of a contract. (Dkt. No. 23, Attach. 1 at 11-12.) However, the case ERII cites in support of this argument cannot be read as broadly as ERII suggests, and further, deals with an instance where the parties had first entered into a settlement agreement on the record in open court, and subsequently one party refused to sign a written agreement that had been delivered. (*Id.*); see *Jackson v. Heidelberg L.L.C.*, 296 F. App'x 102, 103 (2d Cir. 2008). Such circumstances are not present here. In the instant case, the parties exchanged proposals of a settlement agreement which was not to take effect until an executed copy was returned to ERII. (Dkt. No. 15, Attach. 9 at 5, 7-8.) As Judge Hummel noted in his R&R, there is no partial performance "where 'the . . . basic elements of consideration that would have been due to [the parties] under the settlement agreement' were not yet provided." (Dkt. No. 22 at 7 (quoting

10

*Ciaramella*, 131 F.3d at 325).) As further discussed above, the consideration due to the parties here, namely a settlement payment in exchange for a release and stipulation of discontinuance, was triggered only by delivery of an *executed* agreement from plaintiffs to ERII, which never occurred. *See supra* Part IV.A. Therefore, there has been no partial performance, and this factor suggests against enforcement of the settlement agreement.

C. **Agreement as to All Terms**

Here, the parties appeared to ultimately agree on all terms, as ERII accepted plaintiffs' final transmitted version of the agreement without making additional changes. (Dkt. No. 15, Attach. 9 at 2.) Judge Hummel therefore found that this factor leaned in favor of enforcing the agreement, (Dkt. No. 22 at 8), and ERII does not object to this finding.

D. **Whether the Agreement at Issue is the Type of Contract that is Usually Committed to Writing**

As to the final factor, it is clear that this type of agreement is one that is generally committed to writing. *See Ciaramella*, 131 F.3d at 326 ("Settlements of any claim are generally required to be in writing or, at a minimum, made on the record in open court."); *Gaul*, 2014 WL 1466491, at

\*7 ("[A]greements to settle lawsuits are generally in writing."). ERII argues that this factor is satisfied here because the parties' email agreement was in fact reduced to a final writing on August 22, when ERII accepted plaintiffs' final changes to the agreement. (Dkt. No. 23, Attach. 1 at 12-13.) However, what ERII ignores is that, although the final version of the agreement was technically written, as opposed to oral, it was not executed. While the parties may have worked out some preliminary agreement to settle the case, and, while this is the type of agreement that is typically reduced to writing, here the parties were not able to reach a final written, and executed, agreement, and "the requirement that the agreement be in writing and formally executed 'simply cannot be a surprise to anyone.'" *See Ciaramella*, 131 F.3d at 326 (quoting *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984)). Because the parties here do not have an agreement in writing that is formally executed, this factor weighs against enforcement.

In conclusion, the balance of the *Winston* factors, under these circumstances, does not dictate enforcement of the purported settlement agreement here, which was never formally executed by the parties. *See, e.g., Kaczmarcysk*, 414 F. App'x at 355-56 (finding that a settlement

agreement was not binding until the writing memorializing that agreement was actually signed). The court therefore adopts Judge Hummel's recommendation and denies ERII's motion to enforce the settlement.

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that Magistrate Judge Christian F. Hummel's February 6, 2014 Report-Recommendation and Order (Dkt. No. 22) is **ADOPTED** in its entirety; and it is further

**ORDERED** that ERII's motion to enforce settlement (Dkt. No. 15) is **DENIED**; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

June 27, 2014
Albany, New York

_Gary L. Sharpe_
Gary L. Sharpe
Chief Judge
U.S. District Court