**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JUDY BALABAN-KRAUSS et al.,**

                    Plaintiffs,           1:13-cv-282
                                                   (GLS/CFH)

        v.

**EXECUTIVE RISK INDEMNITY, INC.,**

                    Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| **FOR THE PLAINTIFFS:**<br>Office of David R. Sheridan<br>33 Grantwood Road<br>Delmar, NY 12054 | DAVID R. SHERIDAN, ESQ. |
| **FOR THE DEFENDANT:**<br>Cozen, O'Connor Law Firm<br>45 Broadway Atrium<br>16th Floor<br>New York, NY 10006 | MELISSA F. BRILL, ESQ. |

**Gary L. Sharpe
Chief Judge**

## MEMORANDUM-DECISION AND ORDER

### I. Introduction

    Plaintiffs Judy Balaban-Krauss, Robert Callaghan, Ronald Field, and Laura Donaldson, the insured, commenced this diversity action against

defendant Executive Risk Indemnity, Inc. (ERII), the insurer, seeking a declaratory judgment that ERII must pay plaintiffs' expenses incurred to defend underlying lawsuits against them, pursuant to an insurance policy issued by ERII.  (*See generally* Compl., Dkt. No. 1, Attach. 1 at 3-8.) Pending are motions for summary judgment filed by both ERII, (Dkt. No. 27), and plaintiffs, (Dkt. No. 28).  For the reasons that follow, ERII's motion is denied, and plaintiffs' motion is granted.

## II. **Background**[1]

ERII issued a Directors and Officers Liability policy to the New York State Association of Health Care Providers, Inc., for a policy period of January 1, 2011 to January 1, 2012.  (Def.'s Statement of Material Facts (SMF) ¶¶ 1-2, Dkt. No. 27, Attach. 2; Dkt. No. 29, Attach. 13 at 10.)  The

---

[1] Unless otherwise noted, the facts are not in dispute. Additionally, the court notes that, in response to the Statement of Material Facts submitted by plaintiffs in support of their motion, (Dkt. No. 29, Attach. 6), ERII submitted a "statement of material facts in opposition to plaintiffs' motion for summary judgment," (Dkt. No. 30, Attach. 3), which appears to be identical to the Statement of Material Facts already submitted by ERII in support of its own motion, (Dkt. No. 27, Attach. 2), except that it contains three additional paragraphs.  Notably, ERII did not, as is required by the Local Rules of this District, "file a response to [plaintiffs'] Statement of Material Facts . . . [that] mirror[s] the movant's Statement of Material Facts by admitting and/or denying each of the movant's assertions in matching numbered paragraphs." N.D.N.Y. L.R. 7.1(a)(3).  The failure to comply with this rule is not without consequence, as the Local Rules explicitly state that "[t]he Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *Id.*  As ERII has not specifically controverted, in matching numbered paragraphs, any of the factual assertions made in plaintiffs' Statement of Material Facts, (Dkt. No. 29, Attach. 6), those facts which are properly supported by a citation to the record are deemed admitted.

2

policy covers "any past, present or future director, officer, [or] trustee . . . of the Insured Entity," namely, the Association, and the policy was subsequently amended to add the Health Care Providers Self-Insurance Trust (the "Trust"), for which plaintiffs served as trustees, as an additional insured under the policy. (Dkt. No. 29, Attach. 13 at 13, 46.) Pursuant to the policy, ERII is obligated to "pay on behalf of the Insured Persons Loss from Claims first made against them during the Policy Period." (*Id.* at 12.) As these terms are further defined within the policy, ERII is responsible for paying "Defense Expenses," which include "reasonable legal fees and expenses incurred by an Insured in defense of" an underlying claim in which one seeks to "hold any Insured responsible for a Wrongful Act, or . . . a legal . . . proceeding against an Insured Person." (*Id.* at 12-13.) Wrongful acts are specifically defined to include "any actual or alleged error, omission, misstatement, misleading statement or breach of duty . . . by an Insured Person solely in his or her capacity as such." (*Id.* at 13.)

As relevant here, the policy also contains certain exclusions, and notes that ERII "shall not pay Loss, including Defense Expenses, for Claims" that are "based upon, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving . . . any commingling or

3

mishandling of funds with respect to any . . . Insurance Contract." (*Id.* at 14, 53.) While "mishandling of funds" is not further defined, for purposes of this exclusion clause, "Insurance Contract" is defined as "any policy or agreement of insurance, reinsurance, or indemnity, including . . . risk management self-insurance programs." (*Id.* at 54.)

On July 8, 2011, an action was commenced in New York State Supreme Court by the New York State Workers' Compensation Board (the "WCB action") against Balaban-Krauss, Callaghan, Field, and Donaldson, among others. (Def.'s SMF ¶ 3.) An amended complaint was filed in that action on January 23, 2012, (*id.* ¶ 5), which alleges that the defendants acted improperly in the administration and maintenance of the Trust, which the defendants had established in order to comply with their obligations under New York law to provide workers' compensation benefits to their employees, (*id.* ¶ 6). (*See generally* Dkt. No. 29, Attachs. 9, 10.) A separate but similar action (the "Trust action") was commenced by numerous plaintiffs, including the Trust and several of its members, against Field, among others, with an amended complaint filed in that action on January 6, 2012. (Def.'s SMF ¶¶ 14-16; Pls.' SMF ¶ 6, Dkt. No. 29, Attach. 6; *see generally* Dkt. No, 29, Attach. 12.) In general, both actions allege

4

that plaintiffs here, who are named as defendants in the underlying actions as trustees of the Trust, acted improperly and failed to satisfy their duties as trustees, resulting in the Trust being underfunded by several million dollars.[2]  (*See generally* Dkt. No, 29, Attachs. 9, 10, 12.)

Following commencement of the underlying actions, plaintiffs notified ERII and sought coverage for their defense expenses in connection with these underlying actions, pursuant to the policy.  (Pls.' SMF ¶¶ 4, 9; Def.'s SMF ¶ 18; Dkt. No. 29, Attach. 14 at 2-3.)  By letters dated January 9 and January 17, 2013, ERII disclaimed coverage, citing the exclusion provision, and refused to provide coverage based on ERII's assessment that the underlying actions involved "mishandling of funds."  (Defs.' SMF ¶¶ 20, 22; Dkt. No. 29, Attach. 15 at 5; Dkt. No. 29, Attach. 17 at 3.)  Plaintiffs then commenced this action in New York State Supreme Court, Albany County, seeking a declaration that ERII is obligated to pay plaintiffs' past and future defense expenses in the underlying actions.  (*See generally* Compl.)  ERII removed the action to this court, (Dkt. No. 1), and the parties subsequently filed their now-pending motions for summary judgment, (Dkt. Nos. 27, 28).

### III.  Standard of Review

---

[2] Both underlying actions appear to remain pending in state court.  (Dkt. No. 37.)

The standard of review pursuant to Fed. R. Civ. P. 56 is well established and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Wagner v. Swarts*, 827 F. Supp. 2d 85, 92 (N.D.N.Y. 2011), *aff'd sub nom. Wagner v. Sprague*, 489 F. App'x 500 (2d Cir. 2012).

## IV. **Discussion**[3]

ERII contends that it has no duty to provide coverage for plaintiffs' defense expenses in the underlying actions because the underlying complaints fit within the Errors and Omission Exclusion of the insurance policy issued by ERII. (Dkt. No. 27, Attach. 1 at 6-8; Dkt. No. 30 at 2-6.) In response, plaintiffs argue that the underlying allegations do not clearly and entirely fall within the policy's exclusion provision, and that they are thus entitled to summary judgment pursuant to the terms of the policy. (Dkt. No. 29 at 16-23; Dkt. No. 31 at 4-11.) The court agrees with plaintiffs.

Under New York law, an insurer has an "exceedingly broad" duty to defend[4] the insured, *Auto. Ins. Co. of Hartford v. Cook*, 7 N.Y.3d 131, 137

---

[3] The parties appear to agree, and the court concurs, that New York law applies to this diversity action.

[4] Although, technically, the duty at issue in this case is not the duty to defend, but rather the duty to pay defense expenses, courts have found "no relevant difference" between the two, and have therefore applied the same legal standards and principles to both. *Bodewes*

(2006) (internal quotation marks and citation omitted), and the duty to defend is even broader than the duty to indemnify, *see Seaboard Sur. Co. v. Gillette Co.*, 64 N.Y.2d 304, 310 (1984). An insurer's obligation to provide a defense is triggered "whenever the allegations of the complaint suggest . . . a reasonable possibility of coverage." *Cook*, 7 N.Y.3d at 137 (internal quotation marks and citation omitted).

This duty to defend on the insurer's part remains, unless the insurer can "establish, as a matter of law, that there is no possible factual or legal basis on which the insurer might eventually be obligated to indemnify [the insured] under any provision contained in the policy." *Villa Charlotte Bronte, Inc. v. Commercial Union Ins. Co.*, 64 N.Y.2d 846, 848 (1985). For this reason, an insurer who seeks to be relieved of the duty to defend based on a policy exclusion

> bears the heavy burden of demonstrating that the allegations of the complaint cast the pleadings wholly within that exclusion, that the exclusion is subject to no other reasonable interpretation, and that there is no possible factual or legal basis upon which the insurer may eventually be held obligated to indemnify the insured under any policy provision.

---

*v. Ulico Cas. Co.*, 336 F. Supp. 2d 263, 271 (W.D.N.Y. 2004) (quoting *Lowy v. Travelers Prop. & Cas. Co.*, No. 99 Civ. 2727, 2000 WL 526702, at *2 n.1 (S.D.N.Y. May 2, 2000)).

*Frontier Insulation Contractors, Inc. v. Merchs. Mut. Ins. Co.*, 91 N.Y.2d 169, 175 (1997). Further, "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Id.*; *see Int'l Paper Co. v. Cont'l Cas. Co.*, 35 N.Y.2d 322, 325 (1974) (noting that, when an insurer relies on an exclusion provision in order to avoid its obligations under the policy, it is the insurer's burden to demonstrate that the "allegations of the complaint cast that pleading solely and entirely within the policy exclusions, and, further, that the allegations, *in toto*, are subject to no other interpretation").

Moreover, a court reviewing an insurance policy must remain mindful that it is a "contract[ ] to which the ordinary rules of contractual interpretation apply." *Accessories Biz, Inc. v. Linda & Jay Keane, Inc.*, 533 F. Supp. 2d 381, 386 (S.D.N.Y. 2008). New York insurance contracts are construed in light of "common speech." *Ace Wire & Cable Co. v. Aetna Cas. & Sur. Co.*, 60 N.Y.2d 390, 398 (1983). Insurance contracts also must be interpreted "according to the reasonable expectation and purpose of the ordinary businessman when making an ordinary business contract." *Gen. Motors Acceptance Corp. v. Nationwide Ins. Co.*, 4 N.Y.3d 451, 457 (2005) (internal quotation marks and citation omitted). Where there are

ambiguous terms in a policy, these "must be construed in favor of the insured and against the insurer." *White v. Cont'l Cas. Co.*, 9 N.Y.3d 264, 267 (2007); *see Breed v. Ins. Co. of N. Am.*, 46 N.Y.2d 351, 353 (1978) ("Well recognized is the general rule that ambiguities in an insurance policy are to be construed against the insurer, particularly when found in an exclusionary clause.").

Here, ERII contends that it is entitled to summary judgment—and thus a declaration that it is not obligated to cover plaintiffs' defense costs in the underlying actions—because the underlying lawsuits "clearly involve claims for the mishandling of funds," such that "coverage is precluded, as a matter of law," by the policy's exclusion clause. (Dkt. No. 27, Attach. 1 at 6-8.) To the contrary, the court finds that plaintiffs are entitled to summary judgment here. As noted above, the policy clearly provides that ERII "will pay on behalf of the Insured . . . Loss from Claims," which includes responsibility "for a Wrongful Act." (Dkt. No. 29, Attach. 13 at 12.) "Wrongful Act" is further defined by the policy to include "any actual or alleged error, omission, misstatement, misleading statement or breach of duty . . . by an Insured Person solely in his or her capacity as such, or while serving as a director or trustee." (*Id.* at 13.)

9

Although ERII argues that the gravamen of the underlying actions stems from plaintiffs'—defendants in the state court actions—"mishandling of funds," such that defense for the underlying actions would fall within the policy's exclusion clause, (*id.* at 53), that argument is unavailing. (Dkt. No. 27, Attach. 1 at 6-8.) ERII fails to acknowledge the well-settled principle that, in order to rely on an exclusionary clause as a basis to disclaim coverage, an insurer must demonstrate that the "allegations of the [underlying] complaint[s] cast the pleadings *wholly within* that exclusion." *Frontier*, 91 N.Y.2d at 175 (emphasis added). As the New York Court of Appeals has stated, "[i]f any of the claims against the insured arguably arise from covered events, the insurer is required to defend the entire action." *Id.*; *see Fieldston Prop. Owners Ass'n, Inc. v. Hermitage Ins. Co.*, 16 N.Y.3d 257, 264-65 (2011); *BP Air Conditioning Corp. v. One Beacon Ins. Grp.*, 8 N.Y.3d 708, 714 (2007); *Town of Massena v. Healthcare Underwriters Mut. Ins. Co.*, 98 N.Y.2d 435, 443-44 (2002) (noting that "[t]he duty to defend arises whenever the allegations in a complaint against the insured fall within the scope of the risks undertaken by the insurer," and specifying that "[it is immaterial] that the complaint against the insured asserts additional claims which fall outside the policy's general coverage or

10

within its exclusory provisions" (internal quotation marks and citation omitted)).

Here, as set forth by plaintiffs, (Dkt. No. 29 at 18-21; Dkt. No. 31 at 5-11; Dkt. No. 34 at 6-7, 9), many of the allegations in the underlying complaints would appear to be plainly encompassed by the policy. For example, the underlying WCB action alleges, among other things, that the trustees, which include plaintiffs here: "failed to take sufficient or timely corrective actions to establish the financial viability of the Trust"; "failed to properly and timely inform the members of the Trust of the true financial status of the Trust"; "caused the Trust to enter into contracts and agreements that were detrimental to the Trust," (Dkt. No. 29, Attach. 9 at 68); "fail[ed] to properly administer the affairs of the Trust"; "violated their fiduciary duty by failing to perform, or negligently and improperly performing, the Trust Services," (Dkt. No. 29, Attach. 10 at 15); and "fail[ed] to exercise reasonable care and skill in administering the affairs of the Trust, [and thus] were negligent and breached their duties to the Trust," (*id.* at 37). The Trust action, in which Field was named as a defendant, alleges that the trustees, including Field: "contributed to the Trust's deficit" because of their "acts, conduct and/or omissions"; "breached [their

11

fiduciary duties] through various acts and/or omissions"; "failed to ensure that the Trust was at all times properly capitalized"; and "unreasonably, negligently and in violation of their duties as trustees of the Trust failed to properly administer the business and affairs of the Trust[,] including . . . failing to take actions to monitor and correct the actions and deficiencies of" other entities affiliated with the Trust.  (Dkt. No. 29, Attach. 12 at 60, 71, 89-91.)  These allegations fall squarely within the policy's terms requiring coverage for "Wrongful Act[s]," which, as defined by the policy, include "any actual or alleged error, omission, misstatement, misleading statement or breach of duty . . . by an Insured Person solely in his or her capacity as such, or while serving as a director or trustee," (Dkt. No. 29, Attach. 13 at 13), and, on their face, do not involve the "mishandling of funds."

In sum, while some of the allegations and causes of action in the underlying actions may potentially constitute "mishandling of funds," it is clear that other allegations and causes of action plainly fall within the purview of the policy's coverage of liability for "wrongful acts."  Accordingly, given that certain allegations are encompassed by the policy, "[it is immaterial] that the [underlying] complaint[s] against [plaintiffs] assert[] additional claims which fall outside the policy's general coverage or within

its exclusory provisions," and ERII is therefore obligated to provide coverage. *Town of Massena*, 98 N.Y.2d at 443-44 (internal quotation marks and citation omitted); *compare Fieldston Prop. Owners Ass'n*, 16 N.Y.3d at 265 (holding that, where there was a "possibility that [the] policy covers at least one cause of action in each of the two underlying complaints, [the insurer] has a duty to provide a defense to the entirety of both complaints"), *with Cent. Mut. Ins. Co. v. Willig*, 29 F. Supp. 3d 112, 120 (N.D.N.Y. 2014) (holding that insurer had no duty to defend or indemnify where "the *entirety* of the Underlying Complaint fit[] within the Exclusion" (emphasis added))*.*

## V.  Conclusion

**ACCORDINGLY**, it is hereby

**ORDERED** that ERII's motion for summary judgment (Dkt. No. 27) is **DENIED**; and it is further

**ORDERED** that plaintiffs' motion for summary judgment (Dkt. No. 28) is **GRANTED**, and ERII is obligated to provide coverage for plaintiffs' defense expenses in connection with the underlying WCB and Trust actions; and it is further

**ORDERED** that the Clerk close this case; and it is further

13

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED**

June 23, 2015
Albany, New York

Gary L. Sharpe
Chief Judge
U.S. District Court